IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE CHICKIE'S & PETE'S       :        Civil Action
WAGE AND HOUR LITIGATION       :        No. 12-6820


SURRICK, J.                                           JUNE  4  , 2013

**MEMORANDUM**

Presently before the Court is Defendants Packer Café, Inc., CPC Bucks County, LLC, CPC International, LLC, Warrington CPC, LLC, 4010, Inc., Chickie's and Pete's Inc., Peter Ciarrocchi, Jr., and Wright Food Services, LLC's Motion to Stay Proceedings Pending Conclusion of the Department of Labor's Wage and Hour Audit (ECF No. 79). For the following reasons, the Motion will be denied.

**I.    BACKGROUND**

Defendant Peter Ciarrocchi is the owner and chief executive of Packer Café, Inc., CPC Bucks County, LLC, CPC International, LLC, Warrington CPC, LLC, 4010, Inc., and Chickie's and Pete's Inc. (Defs.' Mot. 3 n.1, ECF No. 79.) Defendant Wright Food Services LLC is an independent entity responsible for managing Chickie's & Pete's locations in the Philadelphia International Airport. (*Id.*) Each of the corporate Defendants is a restaurant or sports bar doing business as "Chickie's & Pete's." (*Id.* at 3.) Each location employs waiters, waitresses, and bartenders — employees compensated, in part, by tips from customers. (Compl. ¶ 2, ECF No. 87.) Plaintiffs are current or former employees of Chickie's & Pete's. The present matter is a Consolidated Action combining four class and collective actions. (*See* March 28, 2013 Order,

ECF No. 80.)[1]  The consolidation of these cases resulted from a stipulation and proposed pretrial order presented by all parties involved.  (*See* Stipulation, ECF No. 77.)  On April 11, 2013, Plaintiffs filed a Consolidated Complaint.  (Compl., ECF No. 87.)  In the Complaint, Plaintiffs assert ten claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, *et seq.*, the Pennsylvania Minimum Wage Act, 43 Pa. C.S.C. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment Collection Act, 43 Pa. S. §§ 260.1, *et seq.*, Pennsylvania's unjust enrichment doctrine, the Philadelphia Gratuity Protection Bill, Section 9-614 of The Philadelphia Code, the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a, *et seq.*, and the New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1, *et seq.*  (*See* Compl. ¶¶ 119-196.)

On March 29, 2013, the day after the Court granted the order consolidating the four class and collective actions, Defendants filed the instant Motion to Stay Proceedings Pending Conclusion of the Department of Labor's Wage and Hour Audit.  (Defs.' Mot.)  The Motion references a November 28, 2012 letter sent by the Department of Labor ("DOL") to Defendants requesting a number of records covering a three year time-period from January of 2010 through December of 2012.  (DOL Letter, Defs.' Mot. Ex. A.)  The letter indicates that the DOL is conducting an investigation into Defendant Ciarrocchi's establishments under the FLSA.  (DOL Letter.)  Based on the DOL investigation, Defendants request that the Court stay the consolidated action until the DOL concludes its audit.  On April 12, 2013, Plaintiffs filed a response in opposition requesting that the Court deny Defendants' request to stay.  (Pls.' Resp., ECF No. 86.)

---

[1] The prior individual class and collective actions were captioned as *LaPlante et al. v. Wright Food Services, LLC, et al.*, No. 12-06820 (E.D. Pa. Dec. 6, 2013), *Tygh et al. v. Packer Café, Inc., et al.*, No. 12-07008 (E.D. Pa. Dec. 14, 2012), *Kocher, et al. v. Chickie's & Pete's, Inc.*, No. 13-00277 (E.D. Pa. Jan. 16, 2013), and *Overline v. Chickie's & Pete's, Inc., et al.*, No. 13-01037 (E.D. Pa. Feb. 27, 2013).

## II. LEGAL STANDARD

Neither party disputes that "the power to stay an action is 'incidental' to a court's 'inherent' power." *Sheetz v. Kares*, 534 F. Supp. 278, 279 (E.D. Pa. 1982) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Such a decision is "left to the trial court's broad discretion, and call[s] for the exercise of the court's judgment in 'weigh[ing] competing interests and maintain[ing] an even balance.'" *Infinity Computer Prods. Inc. v. Brother Int'l Corp.*, No. 10-3175, 2012 WL 6619200, at *4 (E.D. Pa. Nov. 16, 2012) (quoting *Landis*, 299 U.S. at 254-55)). Even so, a stay is an extraordinary measure that should only be granted in "exceptional circumstances." *J.B. Hunt Transport, Inc. v. Liverpool Trucking Co., Inc.*, No. 11-1751, 2012 WL 2050923, at *4 (E.D. Pa. June 7, 2012) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). In considering whether to grant a motion to stay, district courts are to evaluate: "(1) the length of the requested stay; (2) the hardship that the movant would face if the stay was not granted; (3) the injury that a stay would inflict on the non-movant; and (4) whether granting a stay would streamline the proceedings by simplifying issues and promoting judicial economy." *Vasvari v. Rite Aid Corp.*, No. 09-2069, 2010 WL 3328210, at *2 (M.D. Pa. Aug. 23, 2010) (citing *Landis*, 299 U.S. at 254-55).

## III. DISCUSSION

Defendants request that the Court grant the Motion to Stay on either of two grounds. First, Defendants maintain that the Court should use its inherent equitable power to stay proceedings to promote judicial economy without prejudicing the parties. (Defs.' Mot. 6.) Second, Defendants assert that the Court should stay proceedings based on adherence to the primary jurisdiction doctrine. (*Id.* at 10.) Plaintiffs respond that granting a stay would cause substantial and

irreparable damage to class members, that halting proceedings at this juncture would add limited utility, and that the claims at issue are within the ordinary experience and competence of the Court. Plaintiffs argue that the primary jurisdiction doctrine does not apply. (Pls.' Resp. 6, 9, 12, 15.)

### A. Equitable Power

Defendants maintain that the Court should stay the proceedings under its equitable powers to manage its docket. (Defs.' Mot. 6.) In considering whether to grant Defendants' Motion, we analyze the four factors discussed in *Landis*. First, with regard to the length of the requested stay, Defendants do not identify the length of the requested stay, but estimate that the DOL will conclude its investigation in a few months. (*Id.* at 8.) Plaintiffs respond that the requested stay is indefinite and there is no way for the Defendants to accurately predict the length of the DOL investigation. (Pls.' Resp. 7.) We agree with Plaintiffs. Defendants' predictions with regard to the length of the DOL investigation are speculative at best. Like complex litigation, Government investigations can last for years. This factor counsels against granting a stay.

Next, we evaluate the hardship Defendants would face if a stay were not granted. Defendants claim that they will be subjected to excessive expenditures of time and money to litigate a class and collective action involving complex issues while also managing a DOL investigation. (Defs.' Mot. 9.) Plaintiffs respond that defending a litigation while facing a concurrent investigation is not a legally cognizable hardship justifying a stay of the proceedings. (Pls.' Resp. 13.) While litigation can be time-consuming and expensive, it is not an irreparable harm or hardship that should halt proceedings. *See Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *In re Countrywide Home Loans, Inc.*, 387 B.R. 467, 474

(Bankr. W.D. Pa. 2008) ("To the extent that this is a complaint about cost and expense, this Court can summarily conclude that it is an insufficient basis to impose a stay.  It has long been recognized that mere litigation expense, even if substantial and unrecoupable, does not constitute irreparable injury.").  Defendants have not identified any other ways in which the continuance of this action would constitute a hardship.  This factor councils against granting a stay.

      The third factor in the analysis is whether a stay would inflict injury upon Plaintiffs.  Defendants maintain that staying the current action pending the conclusion of the DOL's investigation would benefit Plaintiffs by resolving the matters in a more expedient fashion while including all potential class-members involved and avoiding years of costly litigation.  (Defs.' Mot. 7-9.)  Plaintiffs respond that the potential class members are harmed because the statute of limitations will continue to run under the FLSA until the plaintiff files a written consent with the Court.  (Pls.' Resp. 8.)  Under the FLSA, a cause of action arising out of a non-willful violation of the statute must be commenced within two years after the cause of action accrued, while a cause of action asserting a willful violation must be brought within three years of accrual.  *See* 29 U.S.C. § 255(a).  For opt-in plaintiffs, the statute of limitations is only tolled once that individual plaintiff files written consent.  *See* 29 U.S.C. § 256 ("In determining when an action is commenced for purposes of section 255 of this title . . . . [a collective or class action] shall be considered to be commenced in the case of any individual claimant — (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear — on the subsequent date on which such written consent is filed in the court in which the action was commenced."); *Titchenell v. Apria*

*Healthcare Inc.*, No. 11-563, 2011 WL 5428559, at *7 (E.D. Pa. Nov. 8, 2011) (citing *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 200 (3d Cir. 2011)).  Until that point, the statute of limitations continues to run against class-members. *Perella v. Colonial Transit, Inc.*, 148 F.R.D. 147, 149 (W.D. Pa. 1991).  Once the signed consents are filed with the Court, they do not "relate back" to the filing date of the Consolidated Complaint. *See Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 479 (D.N.J. 2000).  Nor would staying the present action automatically toll the statute of limitations.[2]  Accordingly, as Plaintiffs observe, there is a strong potential harm against non-parties to the collective action, as the two or three-year statute of limitations continues to run against potential plaintiffs until the claimant's individual written consent is filed with the Court.  This factor favors denying Defendants' Motion to Stay.

      Finally, with regard to the question of whether a stay would streamline the proceedings by simplifying issues and promoting judicial economy, Defendants argue that judicial economy will be promoted by staying the current action since the DOL investigation might make any civil litigation moot as the DOL is authorized to oversee repayments, if necessary, to current and former employees. (Defs.' Mot. 9-10.)  Plaintiffs respond that the civil litigation will need to proceed irrespective of the DOL's investigatory conclusions since the Consolidated Complaint contains numerous claims under Pennsylvania and New Jersey state law. (Pls.' Resp. 9-10.)  Plaintiffs assert eight claims under Pennsylvania, Philadelphia, and New Jersey law that cannot be adjudicated by the DOL. (*See* Compl.)  As such, Defendants have not established that it would

---

[2] A stay can toll the statute of limitations by agreement of the parties.  In *Wilcox v. Alternative Entm't, Inc.*, No. 09-659, 2010 WL 691702, at *1 (W.D. Wisc. Feb. 25, 2010), the court entered an order granting a stay in an FLSA suit involving a DOL investigation where the parties to the lawsuit agreed to toll the statute of limitations and stipulated to the stay.

streamline proceedings to stay an action that would necessarily be litigated anyway.

Under the circumstances, and after consideration of the factors courts analyze in determining whether to grant a motion to stay, we conclude that it would be inappropriate at this juncture to grant Defendants' Motion.

### B.     Primary Jurisdiction Doctrine

Defendants contend that the Court should stay proceedings out of deference to the DOL based upon the primary jurisdiction doctrine.  (Defs.' Mot. 10.)  As the Supreme Court stated in *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956), "[t]he doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  Under the doctrine, courts are to defer to the expertise of administrative agencies where "'cases rais[e] issues of fact not within the conventional experience of judges . . . .'"  *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 496 F.2d 214, 220 (3d Cir. 1974) (quoting *Far East Conference v. United States*, 342 U.S. 570, 574 (1952)).

In determining whether the doctrine of primary jurisdiction applies, courts evaluate four factors, "including whether the question at issue:  (1) is within the conventional experience of judges or involves technical and policy considerations within the agency's particular field of expertise; (2) calls for the exercise of the agency's discretion; (3) presents a substantial danger of inconsistent rulings; and (4) has already been presented to the agency."  *FBN Am., Inc. v. Athena Int'l, L.L.C.*, No. 97-6427, 1997 WL 698492, at *3 (E.D. Pa. Nov. 4, 1997) (citing *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995)).  Plaintiffs argue that the primary jurisdiction doctrine does not apply where, as here, the Court has before it an

issue that is fully within its competence. (Pls.' Resp. 14.)

We agree that the primary jurisdiction doctrine is inapplicable. There is nothing especially technical about a determination as to whether Defendants were fairly compensating Plaintiffs and opt-in former and current employees. Courts in this District regularly adjudicate FLSA cases. *See, e.g.*, *Mayan v. Rydbom, Exp., Inc.*, No. 07-2658, 2009 WL 3152136, at *11 (E.D. Pa. Sept. 30, 2009) (granting in part and denying in part a motion for summary judgment regarding a group of delivery drivers who contended that their employer failed to pay them overtime compensation in violation of the FLSA and finding that "determining whether any individual employee was entitled to receive overtime compensation is well within the court's abilities"). Moreover, with respect to the state law claims, there is no risk of inconsistent rulings as the investigation by the DOL will not impact those causes of action.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion will be denied.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**
